UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-62061-BLOOM/Valle

U.S. COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

JAY BRUCE GROSSMAN,

    Defendants.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court upon Defendant Jay Bruce Grossman's Motion to Dismiss Complaint, ECF No. [12] ("Motion"). The Court has reviewed the Motion, all supporting and opposing filings, the Complaint, and the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, the Court now denies Defendant's Motion.

## I. BACKGROUND AND ALLEGATIONS

The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") acted to expand the enforcement authority of the Commodity Futures Trading Commission ("CFTC") through various amendments to the Commodity Exchange Act (the "Act" or "CEA"). *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, PL 111-203, July 21, 2010, 124 Stat 1376 (effective July 16, 2011); *see also* Complaint, ECF No. [1] at ¶ 23. The amendments "authorize[d] the Commission to regulate retail commodity transactions offered 'on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis.'" *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 970 (11th Cir. 2014)

1

(quoting Dodd-Frank § 742, 124 Stat. at 1732-33 (codified at 7 U.S.C. § 2(c)(2)(D))); *see also* Compl., ECF No. [1] at ¶ 24.  On December 5, 2012, the CFTC commenced an action against Hunter Wise Commodities, LLC, and other defendants,[1] for various violations of the CEA, asserting that they operated a nationwide scheme to defraud retail commodities transaction investors.  *See U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-81311-CIV, 2013 WL 718503, at *1, 4 (S.D. Fla. Feb. 26, 2013) *aff'd*, 749 F.3d 967 (11th Cir. 2014).  More specifically, the CFTC asserted that Hunter Wise violated 7 U.S.C. § 6(a) (Section 4(a) of the Act) "by conducting off-exchange retail commodities transactions," § 6b(a) (Section 4b(a) of the Act) "by cheating, defrauding, or attempting to cheat or defraud retail customers in connection with retail commodities transactions," and § 9(1) (Section 6(c)(1) of the Act) "by employing a scheme or artifice to defraud in connection with contracts of sale of commodities in interstate commerce."  2013 WL 718503, at *1.  In a matter of first impression with respect to the CFTC's expanded authority, the Honorable Donald M. Middlebrooks, United States District Judge, found that the CFTC had enforcement jurisdiction over the alleged conduct, and further found that it was entitled to preliminarily enjoin Hunter Wise from offering and executing the allegedly illegal retail commodity transactions.  *Id.* at *7-11.  On appeal to the Eleventh Circuit, the decision to grant preliminary injunctive relief was affirmed.  *Hunter Wise*, 749 F.3d at 981-82.

On February 19, 2014, the Court granted partial summary judgment in favor of the CFTC, finding that Hunter Wise was conducting off-exchange retail commodities transactions in

---

[1] The action named various other Hunter Wise entities, including Hunter Wise Services, LLC, Hunter Wise Credit, LLC, Hunter Wise Trading, LLC, as well as various other related enterprises.  *See U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, No. 12-81311-CIV, 2013 WL 718503, at *1 n.1 (S.D. Fla. Feb. 26, 2013) *aff'd*, 749 F.3d 967 (11th Cir. 2014).  For simplicity's sake, the Hunter Wise enterprises are referred to in the collective as "Hunter Wise."  The remaining defendants are not relevant to the instant Motion.

violation of 7 U.S.C. § 6(a) (Section 4(a) of the Act) and was not subject to the "actual delivery exception."[2]  *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 1 F. Supp. 3d 1311, 1320-22 (S.D. Fla. 2014); *see also* Compl., ECF No. [1] at ¶ 18.  A bench trial was then held on the remaining counts.  *See U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1320-21 (S.D. Fla. 2014); Compl., ECF No. [1] at ¶ 18.  Shortly thereafter, Judge Middlebrooks issued an opinion and order finding Hunter Wise liable for fraud under Sections 4b and 6(c)(1) of the CEA and Commission Regulation 180.1, 17 C.F. R. § 180.1.[3]  *See* 21 F. Supp. 3d at 1337-48; *see also* Compl., ECF No. [1] at ¶¶ 18-19.

Defendant Jay Bruce Grossman ("Grossman") acted as attorney for Hunter Wise and other related entities during the Hunter Wise operation, as well as during pendency of the aforementioned litigation, often advising his clients regarding the legitimacy and legality of their enterprise.  *See* Compl., ECF No. [1] at ¶¶ 1-7, 13-17, 34.

As a consequence of his involvement with Hunter Wise, the CFTC now brings an action against Grossman, individually, for acts he allegedly committed during his representation of Hunter Wise.  *See id.*  The CFTC's assertions can be summed up by the first paragraph of its Complaint:

> Defendant [] Grossman [], a Florida attorney, aided and abetted multiple clients in their operation of unlawful precious metals schemes.  The firms Grossman represented claimed to sell physical metals, such as gold, silver, platinum, palladium, and copper, to the retail public on a leveraged, margined, or financed basis.  Despite charging customers hefty sales commissions, storage fees, and

---

[2] The actual delivery exception excepts transactions that result in "actual delivery within 28 days" from the CFTC's enforcement jurisdiction.  *See* 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa).

[3] The Court noted that "Hunter Wise . . . neither purchased precious metals on the retail customers' behalf, disbursed loan funds to finance the portion of the purchase price remaining, nor delivered metals to the retail customers," and, moreover, "the retail customers paid fees and interest on the mistaken belief that the Defendants had done all these things for the retail customers' benefit." *Id.* at 1328.

3

>interest, none of these firms actually sold physical metals or disbursed loans to customers, and Grossman knew it. Nevertheless, he aided his clients in crafting the illusion that their schemes were legitimate and complied with the law, ultimately enabling his clients to defraud thousands of unsophisticated retail customers out of millions of dollars.

*Id.* at ¶ 1.  Accordingly, the CFTC seeks to hold Grossman liable for the Hunter Wise defendants' actions pursuant to 7 U.S.C. § 13c(a), which provides that "[a]ny person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter . . . may be held responsible for such violation as a principal." 7 U.S.C. § 13c(a); *see also* Compl., ECF No. [1] at ¶ 3.

The CFTC stresses that Grossman's role "went well beyond the provision of legal advice." *Id.* at ¶ 34. Specifically, Grossman "helped defraud retail customers by preparing documents, including account agreements and commodity transfer forms[] that he knew would deceive customers throughout the lifecycle of their retail commodity transactions." *Id.* Despite knowing the fraudulent nature of Hunter Wise's operation, Grossman participated in soliciting firms to become Hunter Wise metals dealers "by camouflaging its business model with a false veneer of legality." *See id.* at ¶¶ 39, 43. In order to accomplish the solicitation, Grossman made blatant misrepresentations regarding Hunter Wise's ownership and storage of precious metals, as well as the legality of its enterprise, to potential dealers. *See id.* at ¶¶ 45, 47-48, 51. In doing so, Grossman helped contribute to the loss of over $3.5 million by myriad consumers. *Id.* at ¶¶ 46, 49. Further, Grossman prepared documents, including customer agreements and commodity transfer forms, utilized by Hunter Wise and passed on to dealers who then employed them in retail customer transactions. *See id.* at ¶¶ 53-65. These documents "created the illusion that customers were purchasing physical metals, receiving title to those metals, and receiving loans

4

for the unpaid portion of the purchase price," and, therefore, were successful in "deceiving customers throughout the lifecycle of their retail commodity transactions with Hunter Wise." *See id.* Grossman made similar misrepresentations to courts and the CFTC while representing Hunter Wise in the various actions brought by defrauded retail customers. *See id.* at ¶¶ 66-79. Throughout the course of this representation, Grossman was able to collect hundreds of thousands of dollars in fees, thereby profiting from the exploitation of Hunter Wise's retail customers. *See id.* at ¶¶ 80-83.[4]

Based on Hunter Wise's demonstrated fraudulent conduct and Grossman's involvement with the enterprise, the CFTC brings three counts against Grossman for aiding and abetting various violations of the CEA, specifically, aiding and abetting of off-exchange transactions in violation of Section 4(a) (Count I), *id.* at ¶¶ 102-07, aiding and abetting fraud in violation of Section 4b (Count II), *id.* at ¶¶ 109-12, and aiding and abetting the use or employment of deceptive devices or contrivances in violation of Section 6(c)(1) (Count III), *id.* at ¶¶ 114-16. Grossman now seeks dismissal. *See* Mot., ECF No. [12].

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-

---

[4] The Complaint also makes similar allegations with respect to another precious metal trading scheme operated by AmeriFirst. *See id.* at ¶¶ 84-100. However, a recitation of these facts would be duplicative.

5

unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must conduct itself in a certain fashion. First, a court's review is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). Second, a court is obligated to accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). While the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Supreme Court was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

Seeking dismissal of the Complaint, Grossman first asserts that he was merely providing legal advice to his clients, and, therefore, cannot be subject to liability. *See* Mot., ECF No. [12]. Second, to the extent the Complaint alleges fraud, Grossman contends that the CFTC has failed to meet the specificity standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See id.* Neither argument is persuasive.

### A.     Grossman's Conduct Exceeds Mere Representation

Section 13c(a) of the CEA establishes aiding and abetting liability for violations of the Act, reading in its entirety as follows:

> Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter, or who acts in combination or concert with any other person in any such violation, or who willfully causes an act to be done or omitted which if directly performed or omitted by him or another would be a violation of the provisions of this chapter or any of such rules, regulations, or orders may be held responsible for such violation as a principal.

7 U.S.C. § 13c(a). This provision is modeled after the federal statute for criminal aiding and abetting, 18 U.S.C. § 2, and, therefore, both the CFTC and courts have found that the standard to be applied in determining liability under the CEA mirrors the standard applicable for aiding and abetting under the criminal law. *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 181 (2d Cir. 2013) (citations omitted); *see also Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998) ("Indeed, the language employed in §§ 13(a) and 22(a)(1) of the CEA is virtually identical to that employed in the federal aiding and abetting statute, 18 U.S.C. § 2." (citing *Bosco v. Serhant*, 836 F.2d 271, 279 (7th Cir. 1987)). Thus, in order to state a claim for aiding and abetting under the CEA, the CFTC must allege that Grossman "(1) had knowledge of the principal's [] intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective."[5] *Damato*, 153 F.3d at 473 (citing *United States v. Petty*, 132 F.3d 373, 377 (7th Cir. 1997); *Bosco*, 836 F.2d at 279). In

---

[5] Although the Eleventh Circuit has yet to endorse this formulation, the Second, Third, and Seventh Circuits have. *See Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 189 (3d Cir. 2000); *In re Amaranth*, 730 F.3d at 181; *Damato*, 153 F.3d at 473.

7

short, the statute requires "not only knowledge of the principal's objective but a desire to help him attain it." *Bosco*, 836 F.2d at 279.

Accepting all allegations as true, the Complaint states a claim for aiding and abetting. The CFTC repeatedly alleges that Grossman knew the Hunter Wise entities never possessed the metals it claimed to have been purchasing for its retail customers, intended to further the Hunter Wise enterprise, assisted in the solicitation and enrollment of Hunter Wise dealers, and participated in the crafting of documents that implicitly, or sometimes explicitly, misrepresented and misinformed those to whom the documents were directed. These allegations meet the elements of aiding and abetting.

Grossman hinges his argument for dismissal on the premise that he was merely providing legal representation to his various clients. For instance, in the Hunter Wise actions, Grossman argued that the "actual delivery" exception, which limits the CFTC's authority to regulate commodity transactions where "a contract of sale that results in actual delivery within 28 days," 7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa), was applicable to the Hunter Wise's business model. *See* Mot., ECF No. [12] at 12-14. Although his position was one contrary to the CFTC's interpretation of Dodd-Frank's jurisdictional expansion and was ultimately rejected by the Eleventh Circuit in *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967 (11th Cir. 2014), Grossman contends that his advice in this regard was nonetheless a good-faith argument, not a furtherance of the fraudulent scheme. However, the pleadings go beyond mere representation, and, instead, depict various measures taken by Grossman, which evidence willingness to further Hunter Wise's business enterprise, an enterprise that he, allegedly, knew to be fraudulent. Despite the fact that he may have possessed a good-faith basis for arguing the applicability of the actual delivery exception, Grossman, according to the Complaint, was well

aware that no actual delivery occurred within the 28-day period, ever.  Ultimately, the Hunter Wise scheme was indisputably fraudulent, and has been held as such by this Court.  *See* 21 F. Supp. 3d at 1337-4.[6]  Moreover, the fact that some of the Hunter Wise dealers believed they were in compliance with the CEA and Dodd-Frank does not rectify Grossman's involvement with the entire scheme.[7]

Grossman's argument that he was merely acting as counsel is a factual one, one which brushes off the well-plead allegations found in the Complaint.  In other words, Grossman makes an argument on the facts, not on the pleadings.[8]  The Complaint asserts that Grossman's involvement went beyond the provision of mere legal representation; the Complaint states that Grossman was aware of the fraud and participated in creating the illusion that the enterprise was not fraudulent, in compliance with the law, and otherwise valid in order to lure customers into participation.[9]

---

[6] It is interesting to note that in finding Hunter Wise liable for fraud under the CEA, Judge Middlebrooks also remarked on Grossman's involvement, stating that "Mr. Grossman's actions suggest his role was more akin to an active participant in the fraud rather than disinterested counsel . . .  His conduct in this matter merits scrutiny by the Florida Bar and regulatory authority." *Hunter Wise*, 21 F. Supp. 3d at 1333 n.24.  However, as the current motion is one for dismissal and is therefore limited to the pleadings, the Court explicitly stresses that Judge Middlebrooks comment does not bear on the decision contained herein.

[7] With respect to Grossman's remaining assertions regarding his failure to meet the elements of aiding and abetting, Reply, ECF No. [15] at 8-9, the Court respectfully disagrees and need not address them further.  As noted, the Complaint alleges that Grossman knew of the fraudulent scheme and participated in its advancement.

[8] This is further evidenced by the fact that Grossman's initial Motion is bereft of analogous legal authority.

[9] The cases relied on by the parties are procedurally distinguishable and therefore inapplicable to the Court's review at this juncture.  *See Commodity Futures Trading Comm'n v. Equity Fin. Grp. LLC*, 572 F.3d 150, 162 (3d Cir. 2009) (reviewing opinion of district court entered after bench trial); *Matter of Thomas F. Kolter*, No. 93-19, Comm. Fut. L. Rep. P 26,262, 1994 WL 621595, at *2 (C.F.T.C. Nov. 8, 1994) (appealing grant of summary disposition and order of suspension by administrative law judge).

Furthermore, this is not a situation where allowing the matter to proceed would run afoul of the duties an attorney may have as a zealous advocate for his client. The Court agrees that an attorney must be able to advise his client without fear of liability even if his advice proves to be erroneous. *See* FL ST BAR Rule 4-3.1 (providing that lawyers may assert positions contrary to existing law if there exists a good faith argument to do so).[10] However, Grossman's alleged conduct eclipses such advocacy. Grossman's attempt to create a paradox between the lack of Rule 11 sanctions during the course of his representation in the underlying actions and the allegations herein is equally unavailing. Simply because Grossman was not subjected to Rule 11 sanctions in his role as advocate does not diminish the allegations that Grossman was aware of the fraud and helped to perpetuate it. Because the Court finds that no inconsistency is created by Grossman's supposed good-faith position in court and his involvement behind-the-scenes, the Court respectfully declines to address the remaining arguments pertaining Grossman's conduct in the prior litigation against Hunter Wise and its affiliated entities.

### B. The Complaint is Otherwise Adequately Pled

Grossman asserts that the Complaint must meet the specificity standard of Fed. R. Civ. P. 9(b) as it is rife with allegations of fraud. *See* Mot., ECF No. [12] at 3-5. More specifically, Grossman takes issue with Paragraphs 53 through 65 of the Complaint, which concern Grossman's preparation and review of documents that purportedly misled retail customers, asserting that the allegations contained therein do not meet the standard required under Rule 9(b). *See id.*

---

[10] The Rule reads in full: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." FL ST BAR Rule 4-3.1.

Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard to allegations of fraud or mistake, requiring the plaintiff to allege "with particularity the circumstances constituting fraud or mistake." Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).

The Complaint references various statements found in agreements and other documents purportedly prepared by Grossman throughout the course of representing Hunter Wise and the related entities. *See* Compl., ECF No. [1] at ¶¶ 54-65. Grossman protests the fact that the CFTC has failed to attach the documents to the Complaint and otherwise failed to quote the documents in their entirety. *See* Mot., ECF No. [12] at 3-5. Nevertheless, the Complaint makes clear when the documents were prepared, specifically quotes the language asserted to be deceitful, and attempts to demonstrate why and how the language is false or misleading, thereby offering "more than mere conjecture about whether the above-cited statements were in fact false or fraudulent," *W. Coast Roofing*, 287 F. App'x at 88. *See, e.g.,* Compl., ECF No. [1] at ¶ 54

11

(quoting various misrepresentations made in a "Customer Purchase and Sale Agreement"); ¶ 58 (quoting from a "Transfer of Commodity" form); ¶¶ 59-60 (quoting from a "Transfer of Precious and Industrial Metals" form). Furthermore, the Complaint explicitly notes the consequences of these misrepresentations: "These documents created the illusion that customers were purchasing physical metals, receiving title to those metals, and receiving loans for the unpaid portion of the purchase price, thereby deceiving customers throughout the lifecycle of their retail commodity transactions with Hunter Wise." *Id.* at ¶ 53. These allegations are certainly "more than conclusory allegations that certain statements were fraudulent"; the CFTC has pled "facts giving rise to an inference of fraud," and, therefore, have satisfied Rule 9(b). *W. Coast Roofing*, 287 F. App'x at 88 (citing *Clausen*, 290 F.3d at 1313).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Jay Bruce Grossman's Motion to Dismiss Complaint, **ECF No. [12]**, is **DENIED**. Defendant Grossman shall respond to the CFTC's Complaint within twenty-one (21) days of the date of this Order.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of February, 2015.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record